UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLE A.B.,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner for Operations of Social Security Administration,<br><br>　　　　　Defendant. | Case No. ED CV 16-1693-SP<br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**<u>INTRODUCTION</u>**

On August 5, 2016, plaintiff Kelle A.B. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly considered the opinion of the treating

physician; and (2) whether the ALJ properly evaluated plaintiff's credibility. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 2-9; Defendant's Memorandum in Support of Answer ("D. Mem.") at 1-9.

Having carefully studied the parties' memoranda on the issue in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered the opinion of the treating physician and properly evaluated plaintiff's credibility. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was forty-six years old on the alleged disability onset date, is a high school graduate. AR at 55, 145. Plaintiff has past relevant work as a medical biller, cashier/convenience store clerk, sales clerk cashier, and administrative clerk. *Id*. at 50.

On January 25, 2013, plaintiff filed an application for a period of disability and DIB, alleging an onset date of November 1, 2009 due to osteoarthritis in the lumbar spine, nerve damage in the back, feet problems, degenerative disc disease, and hypothyroidism. *Id*. at 55. The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing. *Id*. at 76-88.

On December 16, 2014, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id*. at 32-54. The ALJ also heard testimony from David Rinehart, a vocational expert. *Id*. at 50-53. On March 20, 2015, the ALJ denied plaintiff's claim for benefits. *Id*. at 8-16.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity from November 1, 2009, the alleged onset date, through December 31, 2014, the

date last insured. *Id*. at 10.

At step two, the ALJ found plaintiff suffered from the severe impairment of lumbar degenerative disc disease, status post surgery. *Id*.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id*. at 11.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined she had the RFC to perform less than the full range of light work, with the limitations that plaintiff could: lift and carry twenty pounds occasionally and ten pounds frequently; sit, stand, or walk for six hours each in an eight-hour day; and occasionally climb, balance, stoop, kneel, crouch, or crawl. *Id*.

The ALJ found, at step four, that plaintiff could perform her past relevant work as a medical biller, sales clerk cashier (clothing), and administrative clerk. *Id*. at 14. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act ("Act" or "SSA"). *Id.* at 15.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

### III.

### **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## <u>DISCUSSION</u>

### A. <u>The ALJ Properly Considered the Treating Physician's Opinion</u>

Plaintiff argues the ALJ failed to properly consider the opinion of treating physician Dr. Gerald Radlauer. P. Mem. at 2-5. Specifically, plaintiff contends the ALJ failed to provide specific and legitimate reasons supported by substantial

4

evidence for rejecting Dr. Radlauer's opinion. *Id.*

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 404.1527(b).[2] In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 404.1527(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d

---

[2] All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

5

813, 818 n.7 (9th Cir. 1993).

### 1. **<u>Medical Opinions</u>**

*Dr. Gerald Radlauer*

Dr. Radlauer, an internist, treated plaintiff from as early as December 2011 through at least July 2014. *See* AR at 215, 284. From 2011 through 2013, Dr. Radlauer did not examine plaintiff's back. *See, e.g., id*. at 202-18, 253-56. The treatment notes indicated that the symptoms from plaintiff's lower back pain were controlled with Norco until September 2013. *See id*. at 204, 209, 213, 255. Beginning in September 2013, Dr. Radlauer indicated that plaintiff's lower back pain was marginally controlled and also prescribed Soma to control the pain. *See id*. at 255. In January 2014, Dr. Radlauer ordered physical therapy. *See id*. at 294. Dr. Radlauer's treatment notes reflect that he performed physical examinations of plaintiff's back throughout 2014 and observed that plaintiff had no tenderness to palpation, no pain, no swelling or edema, and normal movements and strength. *See id*. at 285, 289, 293.

On July 23, 2014, Dr. Radlauer completed a Medical Opinion re: Ability to Do Work-Related Activities (Physical) form. *Id*. at 303-05. Due to plaintiff's back pain, Dr. Radlauer opined plaintiff could: lift and carry twenty pounds occasionally and twenty-five pounds frequently; stand and walk less than two hours in an eight-hour day; sit less than two hours in an eight-hour day; and occasionally twist and climb stairs. *Id*. at 303-04. Dr. Radlauer further opined that plaintiff could only sit for twenty minutes or stand for fifteen minutes before needing to change positions, must walk around for ten minutes every fifteen minutes, needed to be able to shift positions at will, and needed to lie down three times a day. *Id*. Dr. Radlauer opined plaintiff required some manipulative and environmental limitations and could never stoop, crouch, or climb ladders. *See id*. at 304-05. Finally, Dr. Radlauer anticipated plaintiff's impairments would cause her to be absent from

work about three times a month. *Id.* at 305.

*State Agency Physicians*

Dr. J. Hartman and Dr. N. Tsoulos, state agency physicians, reviewed plaintiff's treatment notes and offered opinions on plaintiff's RFC. *See id*. at 57-60, 67-70. Both physicians opined plaintiff had the RFC to: lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour work day; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. *See id*. at 59-60, 69-70.

## 2. **The ALJ's Findings**

In the RFC determination, the ALJ concluded plaintiff could perform less than the full range of light work. *Id.* at 11. The ALJ opined plaintiff had the following postural limitations: lift and carry twenty pounds occasionally and ten pounds frequently; sit, stand, or walk for six hours each in an eight-hour day; and occasionally climb, balance, stoop, kneel, crouch, or crawl. *Id*. In reaching the RFC determination, the ALJ gave great weight to the opinions of the state agency physicians and little weight to Dr. Radlauer's opinion. *Id*. at 13-14. The ALJ rejected Dr. Radlauer's opinion because it was unsupported by objective findings, it was unsupported by the treatment notes, and it was conclusory. *Id*. at 14. The ALJ's reasons are specific and legitimate reasons and supported by substantial evidence.

The ALJ's first ground for discounting Dr. Radlauer's opinion was that it was unsupported by objective clinical findings. *Id*.; *see Archer v. Colvin*, 618 Fed. Appx. 343, 344 (9th Cir. 2015) (ALJ properly rejected the opinions of the physicians because they were inconsistent with their objective findings); *Tonapetyan*, 242 F.3d at 1149 (rejecting physician's opinion, in part, due to a lack of objective evidence to support it). The record contains very few objective

clinical findings. An x-ray from March 14, 2011 showed that plaintiff had degenerative arthritic changes in the lumbar spine with disc space narrowing at three levels, and plaintiff exhibited decreased range of motion in a May 2014 examination. AR at 200, 280. The only other objective findings are from an examination in May 2014 in which plaintiff displayed normal range of motion and strength, and from Dr. Radlauer's examinations in 2014, during which Dr. Radlauer observed plaintiff had no tenderness to palpation, had no pain, had no swelling or edema, had normal movement in her back, and had full muscle strength. *See id*. at 239, 285, 289, 293. Of these objective findings, only the x-ray and decreased range of motion on one occasion support complaints of lower back pain and these mild findings are inconsistent with the extent of limitations opined.

The ALJ's second reason for rejecting Dr. Radlauer's opinion – it was unsupported by the treatment records – was similarly specific and legitimate and supported by substantial evidence. AR at 14; *see Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (the incongruity between a physician's opinion and treatment records is a specific and legitimate reason for rejecting the opinion). As discussed above, Dr. Radlauer's treatment notes contain no objective findings to support the opined limitations. To the contrary, the objective findings demonstrate that plaintiff had no tenderness, no pain, no swelling, and normal strength and movement in the lower back. *See* AR at 285, 289, 293. Moreover, the treatment notes only indicate that plaintiff had the chronic condition of lower back pain but do not contain documentation of any subjective complaints of back pain other than one complaint that the pain made it difficult to work.[3] *See id*. at 286. Indeed, in

---

[3] The record contains three additional instances where plaintiff made subjective complaints of pain. In a March 2011 treatment note, plaintiff complained about back pain to Dr. James Krider. AR at 193. There was no evidence Dr. Radlauer reviewed this treatment note, and plaintiff reported that she only had pain for a month after "'lifting' wrong," not since the alleged onset date.

8

the majority of the treatment notes, Dr. Radlauer indicated that plaintiff's back pain was controlled by medication. *See id*. at 204, 209, 213. Although, in 2014, Dr. Radlauer noted that plaintiff's symptoms were under only "marginal control" and changed plaintiff's treatment plan to include physical therapy and Soma, this treatment plan was not substantial evidence that would support the severity of Dr. Radlauer's opinion. *See id*. at 286, 290, 294.

Finally, substantial evidence supported the ALJ's finding that Dr. Radlauer's opinion was conclusory. *See Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may reject a physician's opinion if it is conclusory, brief, and unsupported by the record); *Tonapetyan*, 242 F.3d at 1149 (an ALJ does not need to accept opinions that are conclusory, brief, and unsupported by clinical findings). The form opinion asked Dr. Radlauer to identify the medical findings to support his opined postural, non-postural, and environmental limitations. *See* AR at 304-05. Each time, Dr. Radlauer did not identify any medical findings to support his opinion and simply wrote "back pain."[4] *See id*.

Accordingly, the ALJ cited specific and legitimate reasons supported by substantial evidence for rejecting Dr. Radlauer's opinion.

**B.     The ALJ Properly Evaluated Plaintiff's Credibility**

---

*See id*. In September 24, 2013, at the emergency room, plaintiff complained of two days of intermittent back pain with motion. *Id*. at 238. Plaintiff apparently did not report this pain or the emergency room visit to Dr. Radlauer at her visit the following day. *See id*. at 253-55. And in May 2014, plaintiff complained about pain to the physical therapist. *Id*. at 280.

[4]    To the extent that Dr. Radlauer was relying on plaintiff's undocumented subjective complaints of back pain, "[a]n ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041. *See Morgan*, 169 F.3d at 602 (ALJ properly rejected physicians' opinions that were premised on claimant's discounted subjective complaints). Plaintiff's subjective complaints are addressed below.

9

Plaintiff contends the ALJ failed to properly evaluate her credibility. P. Mem. at 5-9. Plaintiff argues the ALJ did not identify the testimony he found not credible and did not provide clear and convincing reasons for rejecting her testimony. *Id.*

An ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p. To determine whether testimony concerning symptoms is credible, an ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, an ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *accord Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014). An ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti*, 533 F.3d at 1039; *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 12. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. The ALJ provided four reasons for discounting plaintiff's credibility: (1) plaintiff failed to seek treatment for more than a year after her alleged onset date; (2) her symptoms were controlled with medication; (3) her

alleged symptoms were inconsistent with the objective medical evidence; and (4) she received routine and conservative treatment. *Id*. at 12-13.

Plaintiff contends the ALJ's credibility analysis was flawed from the outset because the ALJ failed to identify the specific testimony he found not to be credible. P. Mem. at 7. Plaintiff correctly asserts that the Ninth Circuit requires an ALJ to "'specifically identify the testimony[] she or he finds not to be credible and . . . explain what evidence undermines the testimony.'" *Treichler v. Comm'r*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Holohan*, 246 F.3d at 1208). General boilerplate statements that a claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" or " the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC] assessment" do not rise to the level of specificity required. *Id*. at 1102-03. But here, the ALJ did not merely make boilerplates statements concerning plaintiff's credibility. Instead, the ALJ summarized plaintiff's testimony and then provided reasons why plaintiff's testimony concerning her alleged onset date and lower back pain were not credible. *See id.* at 11-13. The question then is whether the ALJ's reasons for finding plaintiff's testimony not entirely credible were clear and convincing and supported by substantial evidence.

The ALJ's first reason for finding plaintiff's testimony less than fully credible was her failure to seek treatment prior to March 2011. AR at 12; *see Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (failure to seek treatment may be a basis for an adverse credibility finding unless there was a good reason for not doing so). Plaintiff alleges that her disability onset date is November 1, 2009. *See* AR 39, 55. But as the ALJ noted, the medical records show plaintiff did not seek treatment for back pain until March 2011. *Id*. at 193-94. Had her pain been as debilitating as she alleges, plaintiff reasonably would have sought treatment earlier.

11

1  Moreover, in March 2011, plaintiff told Dr. Krider that she had back surgery in
2  1999 and she reinjured her back about a month prior "'lifting' wrong" while doing
3  laundry. *See id.* at 193. The ALJ reasonably concluded that the fact plaintiff
4  would seek treatment after this reinjury, but not before, indicated that her allegedly
5  limiting pain did not begin in November 2009 as she claimed. This was a clear and
6  convincing reasons for discounting the credibility of her claim.

   The ALJ's second reason for discounting plaintiff's credibility – her
symptoms were controlled by medication – was also supported by substantial
evidence. *See id.* at 12-13; *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006)
("Impairments that can be controlled effectively with medication are not disabling
for purposes of determining eligibility for [disability] benefits."). The treatment
records show that from 2012 through September 2013, plaintiff's back pain was
controlled with Norco. *See id.* at 204, 209, 213, 255. It appears that the pain was
so well controlled that plaintiff's treating physician did not feel the need to perform
an examination of the back during that time. In September 2013, plaintiff appeared
to have some sort of flare up in pain, after which Dr. Radlauer added a muscle
relaxant and physical therapy to her treatment plan. *See id*. at 238-39, 294. Dr.
Radlauer both observed that plaintiff was doing visually "fairly well" on that
treatment plan and that the medications provided "marginal control." *See id*. at
286, 290. The treatment notes also indicate that, other than a few subjective
complaints of pain that appeared to hinge on an aggravating factor, plaintiff did not
complain of back pain. *See id*. at 193, 280. Given that plaintiff's pain had been
well controlled for a period of time, the pain was still under "marginal" control
after a flare up, and the scarcity of plaintiff's pain complaints, the evidence
reasonably supported the ALJ's finding that plaintiff's symptoms were controlled
by medication. As such, this was a clear and convincing reason to find her
allegations regarding the severity of her symptoms to be not entirely credible.

1    Similarly, the ALJ's third reason for finding plaintiff less credible – lack of
objective evidence supporting the claimed symptoms – was also clear and
convincing and supported by substantial evidence. *Id.* at 12-13; *see Rollins v.
Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (lack of corroborative objective
medical evidence may be one factor in evaluating credibility). As discussed above,
other than an x-ray which showed mild findings and a one-time finding of
decreased range of motion, there was no objective medical evidence to support
plaintiff's allegations. Indeed, the physical examinations in 2014 revealed no
tenderness, no pain, no swelling, and normal movement and strength. *See id.* at
285, 289, 293.

Finally, the ALJ found plaintiff's testimony less credible because she
received routine and conservative treatment. *Id.* at 12-13; *see Parra v. Astrue*, 481
F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient
to discount a claimant's testimony regarding severity of an impairment.");
*Tommasetti*, 533 F.3d at 1039-40 (conservative treatment may be a clear and
convincing reason for discounting a claimant's credibility). Plaintiff was treated
with Norco, Soma, and physical therapy. Treatment with pain medication and
physical therapy has been viewed as conservative. *See, e.g., Huizar v. Comm'r*,
428 Fed. Appx. 678, 680 (9th Cir. 2011) (finding that plaintiff responded favorably
to conservative treatment, which included "the use of narcotic/opiate pain
medications"); *Tommasetti*, 533 F.3d at 1040 (characterizing physical therapy as
conservative). Although the Ninth Circuit and its district courts have also
sometimes viewed the use of narcotic pain medication as non-conservative
treatment, in these cases the claimants typically used narcotic medications in
conjunction with other treatments that were also not conservative. *See
LapierreGutt v. Astrue*, 382 Fed. Appx. 662, 664 (9th Cir. 2010) (treatment
consisting of "copious" amounts of narcotic pain medication, occipital nerve

blocks, and trigger point injections was not conservative); *Christie v. Astrue*, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (treatment with narcotics, steroid injections, trigger point injections,epidural injections, and cervical traction was not conservative). Here, plaintiff was treated simply with pain medication and physical therapy. Indeed, as the ALJ noted, the fact that plaintiff's treating physician did not even refer her to a specialist also suggested that her pain was not severe as she alleges.

    Accordingly, the ALJ properly evaluated plaintiff's credibility and provided multiple clear and convincing reasons supported by substantial evidence for discounting it.

## V.
## **CONCLUSION**

    IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: December 28, 2018

SHERI PYM
United States Magistrate Judge